# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | CIVIL ACTION 09-0332-WS-B |
| LYNN CHRISTIE MILLER, etc., et al., | ) |  |
| Defendants. | ) |  |

## ORDER

This matter is before the Court on the plaintiff's motion for summary judgment as to defendant Lynn Christie Miller. (Doc. 43). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 43, 44, 48, 49), and the motion is ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion is due to be granted.

## BACKGROUND

The plaintiff alleges that Miller owes certain federal tax liabilities. Its motion for summary judgment seeks a determination that Miller is indebted in the amounts asserted and that a federal tax lien has arisen in favor of the plaintiff and encumbers her property. The plaintiff also seeks to have the tax lien foreclosed and Miller's residence sold, with the net proceeds applied in partial satisfaction of her federal tax liabilities.[1]

---

[1] The only other defendant is the holder of the mortgage on the real property. The parties have entered a stipulation that foreclosure sale proceeds will be used to satisfy the mortgage (and costs of sale), with any remainder applied to Miller's federal tax liabilities. (Doc. 34).

**DETERMINATIONS OF UNCONTROVERTED FACT**

On April 21, 1999, the United States Tax Court entered a decision, "[p]ursuant to agreement of the parties," that there is a deficiency in income tax due from Miller for the tax year 1990 in the amount of $84,000, and that a penalty of $63,000 is also due from Miller for the same year. (Doc. 44, Rooks Declaration, Exhibit 2). Miller's agreement is further evidenced by her signature. (*Id*. at 2). On July 6, 1999, the plaintiff made assessments against Miller for the $147,000 encompassed in the stipulated judgment, plus $143,043.68 in interest. (*Id*., Exhibit 1 ("Form 4340") at 2). On July 6, 1999, the plaintiff sent statutory notice of balance due, and on August 23, 1999, it sent statutory notice of intent to levy. (*Id*. at 3). The statutory notice of balance due included a demand for payment of the tax liabilities noted above. (Rooks Declaration, ¶ 4). Miller made certain payments on this debt to reduce it, while interest and statutory additions have increased it. As of November 30, 2009, there is due and owing from Miller the sum of $220,603.40, with interest and other statutory additions continuing to accrue thereafter. (*Id*., Exhibit 3 ("non-master file transcript")).

The primary person with the Internal Revenue Service ("the Service") with whom Miller talked was revenue officer Carolyn Rooks. Most of this discussion was by telephone, but it also included several visits to Miller's office. Miller and Rooks spoke dozens of times. (Miller Deposition at 24-25). By letter dated April 12, 2006, Rooks notified Miller of the plaintiff's intention to collect the unpaid tax through enforced collection, including seizing and selling her real property. (Doc. 44, Rooks Affidavit, Exhibit 4). This was not the first time Miller was so warned. (*Id*.). Rooks also verbally notified Miller several times that enforcement action could include seizure of her personal residence, including on April 12, 2006 and September 7, 2006. (Rooks Declaration, ¶ 9). Miller admits that Rooks "repeatedly informed Defendant that she would have to recommend that enforcement action" of the "seizure of Defendant's home." (Doc. 48 at 5-6).

Rooks sent a second letter dated October 6, 2007, again warning Miller of the plaintiff's intention to collect the tax through enforced collection and urging Miller to pay now so as to avoid enforced collection. (*Id*., Exhibit 5). Rooks added the following handwritten notation to the bottom of the October 6 letter: "*Deadline date for enforcement is 10/06/2007." (*Id*. at 2).

Miller is the owner of the real property located at 107 Beverly Court, Mobile, Alabama. (Miller Deposition at 90; Doc. 44, Farrior Declaration, Exhibit 2). The plaintiff filed a notice of federal tax lien with the Probate Court of Mobile County on October 3, 2001. (*Id*., Exhibit 3).

## CONCLUSIONS OF LAW

The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. §§ 7402 and 7403. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1396.

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); *accord Fitzpatrick v.*

*City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made. [citation omitted] If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). "If the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (internal quotes omitted).

In deciding the plaintiff's motion for summary judgment, the Court is required to view the evidence and the reasonable inferences therefrom in the light most favorable to Miller. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Accordingly, the Court's review is limited to those legal arguments the parties have expressly advanced.

**I. Lien.**

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. The Tax Court decision establishes Miller's liability. The Form 4340 and Rooks' declaration establish that the plaintiff made demand for payment, as do various documents submitted by Miller. The non-master form transcript establishes both that Miller has not paid her indebtedness and

the amount of that indebtedness.

"[T]he lien imposed by section 6321 shall arise at the time the assessment is made ...." 26 U.S.C. § 6322. The Form 4340 establishes that assessment was made. Accordingly, the United States holds a lien on Miller's property, including the Beverly Court property.

**II. Timeliness.**

"[T]he lien imposed by section 6321 ... shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322. Miller's liability has not been satisfied, but she argues the lien has become unenforceable by lapse of time.

"When the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun ... within 10 years after the assessment of the tax." 26 U.S.C. § 6502(a). Miller asserts in her brief that in late 2008 an attorney for the plaintiff informed her that the ten-year deadline would expire in March 2009, and she concludes that this statement creates an issue of fact as to whether the assessment was made in March 1999 (rendering this action untimely) or in July 1999, as the Form 4340 reflects. (Doc. 48 at 2, 10). As the plaintiff points out, (Doc. 49 at 3-4), Miller has presented no evidence that any such statement was made.

"When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2). This rule "permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). These materials include "the discovery and disclosure materials on file, and any affidavits."

Fed. R. Civ. P. 56(c)(2). Thus, "[s]tatements of fact in a party's brief, not in proper affidavit form, cannot be considered in determining if a genuine issue of material fact exists." *Helmich v. Kennedy*, 796 F.2d 1441, 1443 (11th Cir. 1986); *accord Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980). Because all Miller offers is her unsworn allegation in brief that the statement was made, the Court cannot over objection consider the assertion on motion for summary judgment. The plaintiff's evidence that the assessment was made in July 1999 remains uncontroverted, and thus as a matter of law this action was timely filed.[2] Therefore, the lien remains in place and enforceable.

### III. Notice and Demand.

Miller objects that the plaintiff "has offered no evidence that a notice of assessment was provided" to her. (Doc. 48 at 1). Miller apparently relies on 26 U.S.C. § 6303(a), which requires that the plaintiff "shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof." This requirement "appl[ies] only in the case of a summary enforcement procedure," not when the government files a civil suit. *United States v. Chila*, 871 F.2d 1015, 1018-19 (11th Cir. 1989). At any rate, the Form 4340 certification establishes a presumption that the notice and demand was sent on the date stated. *Id*. at 1019. The Form 4340, uncontroverted, thus establishes that notice and demand was sent within the 60-day period of Section 6303(a).

---

[2]"The Government's submission of a Form 4340 establishes ... a presumption ... that the assessment was properly made." *United States v. White*, 466 F.3d 1241, 1248 (11th Cir. 2006). The date of the assessment is shown on the Form 4340 and so is subject to the same presumption. *See United States v. Chila*, 871 F.2d 1015, 1017-18 (11th Cir. 1989) (describing *United States v. Dixon*, 672 F. Supp. 503 (M.D. Ala. 1987)). Even absent the presumption, the Form 4340 constitutes the only evidence of the date of assessment and so is controlling here.

**IV. Equitable Estoppel.**

Miller's primary argument is the affirmative defense that the plaintiff is equitably estopped to take enforcement action, based on the notation in Rooks' October 2007 letter. According to Miller, no suit to seize her house could be filed unless Rooks recommended that action to her superiors, and she understood the notation, "*Deadline date for enforcement is 10/06/2007," to mean that Rooks had decided not to recommend seizure. (Doc. 48 at 3, 8, 12). In reliance on this communication, Miller says she ceased her efforts to obtain a new mortgage that would free up the equity in her house and allow her to pay at least a good bit of her debt without losing her house.[3]

"[I]t is far from clear that the doctrine of equitable estoppel may even be applied against a government agency." *Savoury v. United States Attorney General*, 449 F.3d 1307, 1318 (11th Cir. 2006). However, "[t]he Supreme Court's decisions indicate that even if estoppel is available against the Government, it is warranted only if affirmative and egregious misconduct by government agents exists." *Sanz v. United States Security Insurance Co.*, 328 F.3d 1314, 1319-20 (11th Cir. 2003). "Affirmative misconduct requires more than governmental negligence or inaction, because a traditional claim of estoppel already requires at least negligence by the party being estopped." *Savoury*, 449 F.3d at 1319 (internal quotes omitted).

Neither the Supreme Court nor the Eleventh Circuit has ever found affirmative misconduct sufficient to support a claim of equitable estoppel against the government.

---

[3]As the plaintiff notes, "[t]he doctrine of equitable estoppel is not a bar to the correction by the Commissioner of a mistake of law." *Young v. Commissioner*, 926 F.2d 1083, 1090 (11th Cir. 1991). But, as Miller notes, she is not arguing that Rooks told her the statute of limitations on enforcement had expired (which would be a mistake of law) but that Rooks represented she would not recommend seizure.

To the uncertain extent Miller asserts equitable estoppel based on a statement by government counsel that the limitations period expired in March 2009, (Doc. 48 at 2, 10), she invokes a mistake of law, which cannot support an estoppel. Moreover, and as discussed in Part II, Miller has offered no evidence that any such statement was made.

-7-

*See Savoury*, 449 F.3d at 1318.  If such an animal exists, the requisite affirmative misconduct must "at least excee[d] a level the Supreme Court has already deemed insufficient to trigger equitable estoppel," *Sanz* at 1320, and the same is true of cases from the Eleventh Circuit.  Thus, the Court reviews opinions from these Courts rejecting claims of affirmative misconduct.[4]

In *Sanz*, the government told the plaintiff he had filled out all the necessary paperwork and that the government would take care of his federal flood insurance claim, even though he had in fact failed to perform certain conditions precedent to recovery on his policy.  328 F.3d at 1315-16, 1320.  In *United States v. McCorkle*, 321 F.3d 1292 (11th Cir. 2003), the government attorney told defense counsel the government would not seek forfeiture of certain funds but later did so.  *Id*. at 1296 n.6, 1297.  In *Travieso v. Federal Bureau of Prisons,* 217 Fed. Appx. 933 (11th Cir. 2007), a warden provided the defendant 68 days credit on a second prison term based on his having over-served his first prison term, which the Bureau of Prisons revoked as statutorily unauthorized.  *Id*. at 934-35, 936.  The Eleventh Circuit held each of these situations insufficiently egregious as a matter of law to constitute affirmative misconduct.

In *Schweiker v. Hansen*, 450 U.S. 785 (1981), a government employee discouraged the plaintiff from applying for mother's insurance benefits by erroneously telling her she was ineligible.  *Id*. at 786, 790.  In *Montana v. Kennedy*, 366 U.S. 308 (1961), a federal official incorrectly told the petitioner's mother (a United States citizen pregnant with the petitioner in Italy) that she could not return to the United States while pregnant.  *Id*. at 314-15.  In *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380 (1947), a government committee advised the plaintiffs that all their acreage was insurable, when in fact most was not.  *Id*. at 382.  In each of these cases, the Supreme Court precluded recovery

---

[4]Because the parties agree that Rooks' notation constitutes affirmative conduct, the Court does not address those cases in which the government merely passively failed to do or say something and focuses instead on cases in which the government's affirmative action was determined not to be misconduct sufficient to support an estoppel defense.

despite the incorrect information.

Rooks' alleged misstatement is of a piece with those in these cases. At worst, she erroneously advised Miller that the government would not take her residence, a statement comparable to those described above and precisely parallel to that held insufficient in *McCorkle*. Miller can fare no better than the proponents of estoppel in *McCorkle* and the other cited cases.

Miller's invocation of estoppel is actually weaker than those in the cases cited above, because in most of them it was clear that the government official made an incorrect statement. Here, Rooks has produced evidence that her note was intended to convey that enforcement action would commence on October 6, (Doc. 44, Rooks Declaration, ¶ 8), and this is a perfectly natural reading.[5] As noted, and as Miller admits, "Rooks repeatedly informed Defendant that she would have to recommend that enforcement action" of "seizure of Defendant's home." (Doc. 48 at 5-6).[6] Indeed, the very letter on which Miller relies explicitly reminded her that she had been warned the Service intended to pursue enforced collection, including "seizing and selling your property," and it instructed her to pay her debt immediately "[t]o prevent collection action." (Doc. 44, Rooks Declaration, Exhibit 5). It is mere wishful thinking to suggest that Rooks conveyed to Miller that her house would not be taken only a few lines after

---

[5]It is also consistent with Rooks' September 25 entry in Miller's file: "Set deadline to comply by 10/06/07. If no response will proceed with enforcement action via request for seizure." (Doc. 48, Exhibit B at Bates 150).

[6]Miller admits she was advised in September 2006, by someone other than Rooks, that Rooks had decided to seize her home, that Rooks' decision would be upheld, that the next enforcement action would be seizure of the home, that there was no set time frame for such seizure, and that Miller was in a "race against time" to pay her debt before seizure occurred. (Doc. 48 at 4, 9; *id*. Exhibit B at Bates 137). This narrative does not suggest that further recommendation by Rooks was required before seizure occurred, but the same records reflect that Rooks "worked on seizure recommendation" in July 2007 and, in September 2007, planned to "request ... seizure" in October. (*Id*. at Bates 148-50).

telling her that her house was about to be taken, and after repeatedly telling Miller she would recommend that her house be seized.

In context, then, Rooks' notation plainly means just what Rooks says it means: that the Service would begin enforced collection contemporaneously with Rooks' letter.[7] Only when the notation is viewed in isolation is Miller's construction of it colorable,[8] and she has offered no authority for the proposition that she can invoke equitable estoppel against the government by clinging to an isolated statement which, even if read as she wishes, flatly contradicts a long and express history of statements by the same official.[9]

Moreover, affirmative misconduct requires more than negligence. Miller says that Rooks "deliberately led [her] to believe that Plaintiff would not try to seize Defendant's home" and "intended to mislead Defendant into concluding that no enforcement action would be taken after October 6, 2007." (Doc. 48 at 10, 13). As the discussion above makes clear, Rooks' notation is at worst an imprecise way of expressing that enforcement

---

[7]Miller attempts to challenge this conclusion by questioning why Rooks would tell her on October 6 that she had only until October 6 to satisfy her debt. (Doc. 48 at 10, 12, 13). But the notation does not state or suggest that Miller could not pay her debt after October 6, only that enforcement action would commence on that date. Miller at all times had the option to pay the debt at any time before seizure actually occurred. (Doc. 48, Exhibit B at Bates 137).

[8]It is barely even that. According to Miller, the notation reflects that Rooks had decided not to recommend seizure, which is not a "deadline date for enforcement" at all.

[9]On the contrary, the Supreme Court has suggested that equitable estoppel against the government cannot be based on a statement that can reasonably be construed as not being incorrect. In *Montana*, the consular official told the petitioner's pregnant mother, "I am sorry, Mrs., you cannot [return to the United States] in that condition." While the petitioner construed this as an official misstatement that pregnant citizens could not properly return to the United States, the Supreme Court said it "may have been only the consular official's wellmeant [sic] advice," (for example, that an ocean liner was no place for a pregnant woman), and it concluded that the statement "falls far short of misconduct" that might estop the government. 366 U.S. at 314-15; *see also United States v. Pepperman*, 976 F.2d 123, 131 (3rd Cir. 1992) (ambiguity in documents did not support equitable estoppel).

would commence October 6, 2007. Miller identifies no evidence capable of supporting the proposition that Rooks, for some perverse reason known only to her, desired to trick Miller into believing her home would not be seized while all the time knowing it would be.

Miller relies on her efforts to obtain a new mortgage, with which to pay off her existing mortgage and extract the equity to pay the Service. (Doc. 48 at 9-10). According to her exhibit, in January 2007 Miller advised Rooks by telefax that she had received loan approval through Lending Tree but that, in order to close, she would need a payoff amount for the tax lien or an agreement to subordinate the tax lien in order to close. On January 30, Miller telefaxed a document to Rooks for approval, but it was unsigned and failed to specify whether Miller was seeking discharge or subordination. On March 1, Rooks prepared a letter to Miller asking her to obtain original signatures and clarify whether she sought discharge or subordination. In March 2007, Rooks also left Miller a voice mail requesting the same information and went by Miller's office and left another message with the same request.[10] In the seven months between these communications and the October 6 letter, Miller's exhibit indicates that she never complied with Rooks' request. (Doc. 44, Exhibit B at Bates 141-150).[11]

Miller suggests these facts indicate that Rooks "intended Defendant not make further efforts to obtain a mortgage to satisfy the debt," (Doc. 48 at 12), and she apparently extrapolates that this shows Rooks was determined to keep Miller from doing anything that might interfere with Rooks' desire to seize the home. But all this evidence shows is Miller's prolonged failure to satisfy Rooks' repeated requests for necessary

---

[10]Miller notes that the plaintiff has not produced the March 1 letter, (Doc. 48 at 9), but she does not assert that she never received it or the two other messages Rooks left.

[11]Miller claims to have provided a signature, (Miller Deposition at 37), but she does not claim to have provided the other requested information. Miller concedes she has no recollection of making any effort to follow up with Rooks. (*Id.*).

information concerning Miller's plan; it does nothing to suggest that Rooks harbored an intent to deceive Miller and thereby ensure that Miller did not save her house.

Because Miller has failed to raise a genuine issue of material fact as to whether the plaintiff engaged in "affirmative misconduct" of the quality necessary to support an equitable estoppel defense against the government, her defense fails as a matter of law.

## V. Adherence to Procedures.

Publication 594 discusses "the steps the [Service] may take to collect overdue taxes." (Doc. 48, Exhibit D at 1). The publication states that, "[i]f you still make no effort to pay your bill or to work out a payment plan, we may also take more serious action, such as ... taking your other income or assets." (*Id*. at 2). Miller posits there is a material question of fact whether Rooks complied with this statement, "considering the numerous attempts made by Defendant to secure a mortgage and pay the IRS." (Doc. 48 at 6). On its face, Publication 594 "is for information only" and is "not a precise and technical analysis of the law," (Doc. 48, Exhibit D at 1), so it does not suggest that Rooks has violated any applicable procedure. Miller has identified no legal authority that could support a contrary proposition, nor any authority that a failure to follow procedures would preclude the plaintiff from proceeding.

## VI. Foreclosure.

"[I]n all cases where a claim of interest of the United States therein is established, [the court] may decree a sale of such property ...." 26 U.S.C. § 7403(c). The plaintiff seeks, and is entitled to, foreclosure of its lien by sale of the Beverly Court property. As discussed in Part I, the plaintiff has a lien against the Beverly Court property. As discussed in Parts II-V, Miller's efforts to nullify the lien or preclude the plaintiff from enforcing it are meritless. Accordingly, the plaintiff's claim of interest in the Beverly Court property is established.

**CONCLUSION**

For the reasons set forth above, the plaintiff's motion for summary judgment is **granted**. Judgment in the amount of $220,603.40, plus interest and other statutory additions accruing from and after November 30, 2009, will be entered by separate order. The plaintiff is **ordered** to file and serve, on or before **June 18, 2010**, a proposed decree of foreclosure, order of sale, and any other documents the judicial approval of which is necessary to initiate sale of the property.

DONE and ORDERED this 28th day of May, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE