IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 09-0332-WS-B |
| | ) |
| LYNN CHRISTIE MILLER, etc., et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter is before the Court on the plaintiff's motion for order confirming sale and directing distribution of sale proceeds. (Doc. 56). The taxpayer declined the opportunity to object, (Doc. 57), but the mortgagee ("Washington Mutual") filed an objection, to which the plaintiff has responded. (Docs. 58, 59).

The Court previously entered a decree of foreclosure and order of sale. (Doc. 54). The record reflects that the property was sold in compliance with that order. No irregularity in the procedure and no inadequacy in the sales price is alleged or detectable. The motion for order confirming sale is therefore **granted**. It is **ordered** that the sale of the real property identified as 107 Beverly Court, Mobile, Alabama and more particularly described in the decree of foreclosure and order of sale, (Doc. 54 at 2), hereinafter referred to as "the Property," to Edward and Marissa Inge for the sum of $122,500, is **confirmed**. The IRS is **ordered** to issue a deed for the Property to Edward and Marissa Inge or an entity designated by them.

Left for consideration is the distribution of the sale proceeds. On January 7, 2010, the plaintiff and Washington Mutual filed a stipulation, in which they agreed that Washington Mutual's mortgage is superior to the plaintiff's tax liens. (Doc. 34 at 1). They also agreed that proceeds of any foreclosure sale should be applied first to reimburse the plaintiff for its costs of sale; second, to satisfy Washington Mutual's

mortgage; and third, to satisfy the plaintiff's tax liens. (*Id*. at 2). The Court's order of sale, to which the parties declined the opportunity to object, (Doc. 53), adopted this sequence. (Doc. 54 at 8-9).

The plaintiff claims sale costs of $1,634.18, to which Washington Mutual does not object. The plaintiff will be awarded this sum.

The amount required to satisfy Washington Mutual's mortgage as of April 12, 2011 is $45,451.27, which includes attorney's fees of at least $3,575.00, with per diem interest since April 12 of $6.16. (Doc. 58 at 2; *id*., Exhibit B at 2). The plaintiff maintains that attorney's fees should be capped at $1,125.00. (Doc. 59 at 6).

Because Washington Mutual's mortgage has priority over the plaintiff's tax lien, its priority "shall extend to … the reasonable expenses, including reasonable compensation for attorneys, actually incurred in collecting or enforcing the obligation secured." 26 U.S.C. § 6323(e)(3). The plaintiff argues that only those fees incurred before the parties entered their stipulation partake of Washington Mutual's priority under this statute.[1] The plaintiff reasons that, once priority was established, Washington Mutual could sit back and allow the plaintiff to do all the work, needing only to relay the payoff amount when the plaintiff requested it. Post-stipulation fees, it concludes, were thus both unreasonable and not incurred in collecting or enforcing the mortgage obligation. (Doc. 59 at 5-6).

Once the stipulation was entered, it remained uncertain whether the plaintiff would receive a foreclosure decree and order of sale. The taxpayer fiercely resisted, and the matter was not resolved until after contentious summary judgment proceedings. Washington Mutual was obviously interested in the successful conclusion of the litigation, and in a smooth tax sale, for without them its ultimate remedy would be delayed and it might itself have to institute foreclosure proceedings. The plaintiff

---

[1] Since the sale amount is inadequate to satisfy the tax lien, Washington Mutual can recover its attorney's fees from the sale proceeds, if at all, only under Section 6323(e)(3).

concedes that the post-stipulation fees centered on counsel's monitoring of this protracted litigation and corresponding with her client regarding it, (Doc. 59 at 5), and it is difficult to see why a reasonable mortgagee in this situation would not engage in such activity as part of its collection/enforcement efforts. The plaintiff identifies no authority for the proposition that such fees are either unreasonable or not incurred in collecting or enforcing the mortgage.

The Court notes that some of the charged fees resulted from communications initiated by the plaintiff, as to which it can scarcely complain. Similarly, other fees resulted from the plaintiff's unexplained five-month delay in conducting the sale after the order of sale was entered, which prompted periodic inquiries from Washington Mutual. Still other fees were incurred in challenging the plaintiff's informally communicated position that it would oppose the priority of Washington Mutual's post-stipulation attorney's fees. Since the mortgage provides for recovery of attorney's fees incurred in pursuing the mortgagee's remedies thereunder, and since the plaintiff's position would effectively eliminate that recovery as to post-stipulation fees (since a lawsuit against the taxpayer over such a small amount would not be worth the candle), these fees were reasonably incurred in collecting or enforcing the mortgage.

The plaintiff does not challenge counsel's hourly rate and identifies no objection to specific entries other than as rejected above, and the Court will not search for deficiencies on the plaintiff's behalf. However, to the uncertain extent Washington Mutual purports to reserve the right to claim additional fees and expenses not represented by the $3,575.00 request timely submitted, it will not be allowed.

The entire $122,500 sale price should be in the registry of the Court. Through an error, however, only the initial $24,500 was so deposited; the $98,000 balance was received by the United States Treasury. This dichotomy complicates distribution, but not fatally.

For the reasons set forth above, the plaintiff's motion directing distribution of sale proceeds is **granted in part**. The Clerk is directed to disburse to Washington Mutual the

$24,500 held in the registry of the Court.[2]

The plaintiff is **ordered** promptly to remit to Washington Mutual: (1) $20,951.27; plus (2) an additional per diem amount of $6.16 beginning with April 13, 2011 and ending with the day the plaintiff prepares and mails to Washington Mutual the check ordered by this paragraph.

The balance of the $98,000.00 currently held by the plaintiff shall be retained by it, first to cover costs of the sale in the amount of $1,634.18 and, second, to partially satisfy its lien for federal income taxes owed by Lynn Christie Miller for the 1990 tax year in the approximate amount of $220,603.40.

To the extent the plaintiff seeks a lesser distribution to Washington Mutual, its motion is **denied**.

DONE and ORDERED this 5th day of May, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] The deposited funds are not held at interest, so there is no interest to disburse.